Colin M. Stephens
STEPHENS BROOKE, P.C.
315 W. Pine
Missoula, MT 59802
Phone: (406) 721-0300
colin@stephensbrooke.com

*Attorney for Defendant*

In the United States District Court
For the District of Montana
Billings Division

| United States of America, | Cause No. CR 20-121-BLG-DLC |
|---|---|
| Plaintiff, | |
| -vs- | Defendant's Reply Brief |
| Gregory Richard Boyd, | |
| Defendant. | |

## Reply

The government argues that Boyd "faces a heavy burden." (Dkt. 37 at 4). Let us be clear: In light of *Bruen*, it is the government that bears the lion's share of the burden. *See Bruen*, 142 S. Ct. 2111. Boyd's only burden is to establish that the plain text of the *Second Amendment* protects his course of conduct. Here, Boyd is obviously a member of the

class of persons included within the *Second Amendment*, i.e., "the people." For the sake of this argument, Boyd is alleged to have possessed the handgun. The handgun was found in his residence. Both the Supreme Court and the parties in *Bruen* acknowledged handguns are weapons "in common use" today for self-defense. *Bruen*, 142 S. Ct. at 2128 (*citing and quoting Heller,* 554 U.S. at 580). Therefore, Boyd has satisfied the minimal burden placed on him by the Court's decision in *Bruen*.

If anyone faces a heavy burden, it is the government, which is required to show the prohibition is consistent with the historical tradition of firearm regulation as it existed at the time of the ratification of the *Second Amendment*. The government assumes, but does not demonstrate, it has overcome its own heavy burden.

To support its argument that Boyd has not met his own burden, the government asserts that *Heller* "defined the right to bear arms as belonging to 'law abiding, responsible citizens.'" (Dkt. 37 at 5) (citing and quoting *Heller*, 544 U.S. at 635). *Bruen* requires reviewing courts to look to the plain text of the *Second Amendment*. *Bruen*, 142 S. Ct. at

2126.  Nowhere in the plain text of the *Second Amendment* are the phrases: "law abiding" or "responsible citizens."  Further, the plain text of the *Amendment* does not even infer the that the protected right extends only to people who are law abiding and responsible citizens.  At best, this language from *Heller* is the product of the majority opinion to a comment in a dissenting opinion in *Heller*.  At worst, the language appears *ex nihilo* and is dicta.

Regardless, what is abundantly clear from the language in *Heller* is that at its absolute minimum, the *Second Amendment* protects the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  *Heller*, 554 U.S. at 635.  If this Court is to accept this language from *Heller* as binding authority, it must also acknowledge the prefatory language:  "And whatever else [the *Second Amendment*] **leaves to further evaluation**, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of heart and home."  *Id.* (emphasis added).

*Bruen* is a product of this "further evaluation."  Any limitation *Bruen* places on the class of persons exempted from *Second Amendment*

protection is limited to the historical analysis discussed in *Bruen*.

*Bruen* also modifies the language in *Heller* that nothing in that decision should "cast doubt on the longstanding prohibitions of the possession of firearms by felons." *Heller*, 554 U.S. at 626, 635 (See also Dkt. 37 at 2). *Bruen* modified what it means for a prohibition to be "longstanding." *Bruen* deemed unconstitutional a New York licensing scheme that "largely tracks that of the early 1900s." *Bruen*, 142 S. Ct. at 2122. As is made clear in *Bruen*, "longstanding" means a prohibition that existed before or around 1791. Therefore, the language in *Heller* and relied upon by the government, requires consideration of *Bruen's* chronological qualifications.

The government also asserts that *Bruen* "did not abrogate long-standing legal precedent or the regulatory prohibitions of felons possessing firearms." That assertion is only partially correct, and as the *Bruen* framework makes its way through the courts, it may prove to be wholly incorrect. In the aftermath of *Bruen's* new analytical framework, at least one court has determined that *18 U.S.C. § 922(g)(8)*, prohibition of firearm ownership by one subject to an order of

protection, is unconstitutional.  *United States v. Perez-Gallan*, 2022 WL 16858516 (W.D. Texas) (November 10, 2022).  A second court has ruled *18 U.S.C. § 922(n)*[1] also fails to satisfy *Bruen's* analysis.  *United States v. Stambaugh*, 2022 WL 16936043, 2022 U.S. Dist. LEXIS 206016 (W.D. Oklahoma) (Nov. 14, 2022).  Both *§§ 922(n)* and *(g)(8)* had previously survived constitutional challenges.  *See e.g. United States v. Pierson*, 139 F.3d 501 (5th Cir. 1998) (*§ 922(g)(8)* not unconstitutional under the Commerce Clause); *United States v. Rivero*, 218 Fed. Appx. 958 (11th Cir. 2007) (*per curiam*) (cert. denied, *Rivero v. United States*, 127 S. Ct. 3028, June 2007)) (*922(n)* does not violate *Second Amendment*).

Further, one week after *Bruen* was released, the Supreme Court vacated decisions from federal courts of appeals that had upheld bans on common rifles or magazines in Maryland, California, and New Jersey.  *Bianchi v. Frosh*, 858 Fed. Appx 645 (4th Cir. 2021), vacated by 142 S. Ct. 2898 (2022) (mem.); *Ass'n of N.J. Rifle & Pistol Clubs Inc. v. Att'y Gen. N.J.*, 974 F.3d 237 (3d Cir. 2020), vacated by 142 S. Ct. 2894 (2002) (No. 20-1507); *Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021),

---

[1] Receipt of a Firearm by a Person under Indictment.

vacated by 142 S. Ct. 2895 (2022).

The government argues that *Bruen* did not overrule precedent and cites to criteria that demonstrates when, in fact, precedent has been overruled, i.e., "where the reasoning or theory of" the earlier "authority is clearly irreconcilable with the reasoning *or theory* of intervening higher authority." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (Dkt. 37 at 5). Instead, argues the government, *Bruen* "merely did away with the 'means-end scrutiny' 'second step' that court had applied in some Second Amendment cases." (Dkt. 37 at 5). After *Bruen*, it is only the first step that remains. "At the first step, the government may justify its regulation by establishing that the challenged law regulates activity falling outside the scope of the right as originally understood." *Bruen*, 142 S. Ct. at 2126. By eliminating the second step, the *Bruen* Court effectively overruled any previous court decision predicated on the reasoning or theory of the "second step." By the government's own definition, *Bruen* certainly overruled those prior precedent by making them "irreconcilable with the reasoning or theory" of *Bruen*.

The one aspect of prior precedent that remains after *Bruen* is that

the government bears the burden of establishing that the regulated conduct, i.e., a prohibition of felons in possession of firearms, was beyond the original scope of the *Second Amendment*. The government has not met that burden. Even one were to view the originalist theory adopted in *Bruen* as both absurd and logical untenable, it remains the prevailing method of constitutional interpretation.[2]

While the government and the various district courts may not like the results the theory produces, absent proof that a prohibition against felons possessing firearms existed at the time the *Second Amendment* was adopted, the only result that is available is that *§ 922(g)(1)* is unconstitutional in light of *Bruen*. The challenged raised by Boyd is neither new nor novel. It is being raised by hundreds of defendants across the country. To the undersigned's knowledge, the government has yet to produce a brief that demonstrates to the degree required by *Bruen* that felons were prohibited from possessing firearms at the time the Constitution was ratified.

---

[2] In the future, *Bruen* may takes its place among *Dred Scott v. Sandford*, 60 U.S. 393 (1856), and *Korematsu v. United States*, 323 U.S. 214 (1944), but its methodology must be applied in Boyd's case.

Rather than produce historical proof supporting the regulation, the government relies on concurrences in *Bruen* and the plurality in *McDonald* for the proposition that neither *Bruen* nor *McDonald* "cast doubt on longstanding prohibitions on the possession of firearms by felons." *Heller*, at 626; *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring).

The government also argues that "*Bruen* repeatedly described the Second Amendment as limited to 'law-abiding citizens." (Dkt. 37 at 6) (citing *Bruen*, 142 S. Ct. 2122, 2131, 2133, 2134, 2138 2150, 2156.) While the decision does make repeated reference to "law-abiding citizens" the government's assertion that *Bruen* is "**limited** to law-abiding citizen," is absolutely false. (Dkt. 37 at 6) (emphasis added). No such clear statement of history or law exists in *Bruen*. On November 16, 2022, a panel of the Court of Appeals for the Third Circuit decided *Range v. Attorney General United States of America*, ___ F.4th ___, 2022 U.S. App. LEXIS 31614 (3d Cir. 2022). That Court found *§ 922(g)(1)* to be constitutional even after *Bruen*. The Third Circuit's 50-page opinion undertook a significant historical analysis.

Nowhere in that opinion does the Court even suggest that *Bruen* was "limited to law-abiding citizens."

With only the feeblest of historical analysis the government posits that *922(g)(1)* is supported by a historical tradition of disarming felons, e.g., an amendment proposed by Samuel Adams at the Massachusetts convention to ratify the Constitution, recommending 'that the said Constitution be never construed to authorize Congress . . . to prevent the people of the United States, *who are peaceable citizens*, from keeping their own arms.'" (Dkt. 37 at 12-13) (emphasis in original) (citing Bernard Schwartz, *The Bill of Rights: A Documentary History*, 662, 674-75(1971)).³

The Third Circuit panel in *Range* highlighted a English history of disarming "nonconformists, (i.e., non-Anglican) Protestants" who refused to participate in the Church of England.  Such individuals were presumed by the English Crown to be dangerous.  *Range*, 2022 U.S. App. 31614, * 16.  Presumably such a restriction would not survive the

---

³The government fails to mention whether the proposed Amendment passed and the citation and link provided to the source is behind a paywall presently inaccessible to counsel.

Establishment Clause of the Constitution, but this type of disarmament was permitted during the period history significant to the *Bruen* analysis. The same held true for Catholics who refused to renounce their faith. *Id.* at * 18.

"The earliest firearm legislation in colonial America prohibited Native Americans, Black people[4], and indentured servants from owning firearms." *Id.* at * 19 (citing Michael A. Bellesiles, *Gun Laws in early America: The Regulation of Firearms Ownership, 1607-1794*, 16 Law & Hist. Rev. 567, 578-79 (1998). Catholics, too, were disarmed in the American colonies even without a need to demonstrate they had a proclivity for violence. *Range*, * 21. The *Range* Court did not endorse these types of "repugnant, status based regulations of an earlier period." Rather, the Third Circuit cited the restrictions, however repugnant, "merely to demonstrate the Nation's tradition of imposing categorical, status based bans on firearm possession." *Range*, * 22 n. 19.

The Third Circuit's laudable historical analysis notwithstanding,

---

[4]As a Black man, Boyd would have been prohibited from firearm ownership.

like the government, *Range* too fails to fulfill *Bruen's* obligation. Simply because one group of people were disarmed does not demonstrate "whether a historical regulation is a proper analogue for a distinctly modern firearm regulation." *Bruen* at 2132. A regulation prohibiting nonviolent Catholics is not a regulation that is "distinctly similar" to *§ 922(g)(1)*. A regulation that prohibited Quakers or those who refused to take a "loyalty oath" is not distinctly similar to the breadth with which *§ 922(g)(1)* disarms an entire class of individuals.

*Bruen* establishes a dual-track review of historical evidence, with the proper track depending on what kind of problem the statute is meant to address. The Supreme Court explained that in "some cases" a challenged regulation "addresses a general societal problem that has persisted since the 18th century." *Bruen*, 142 S. Ct. at 2131. For such regulations, the government must point to a robust tradition of "distinctly similar" historical traditions. *Id.* The Court then explained that in "other cases," a statute "implicat[es] unprecedented societal concerns or dramatic technological changes" or addresses a problem that was "unimaginable at the founding." *Id.* at 21331. For the latter

regulations – and **only** the latter regulations – the government can use "analogical reasoning," which involves the "relatively similar" inquiry. *Id.*

The problems *§ 922(g)* addresses have "persisted since the 18th century." Felons' access to firearms, for instances, has been a potential problem since 1791 and before. That means that in *§ 922(g)(1)* cases, courts must review the government's evidence under the "distinctly similar" rubric, **not** the "relatively similar" rubric. Therefore, the only way the government can bear its burden in *§ 922(g)(1)* cases is by showing a "well-established and representative" tradition of statutes that are "distinctly similar" to *§ 922(1)(g)*. Using the "relatively similar" test is a clear misapplication of *Bruen*.

## Conclusion

It may be true that every court, including the Third Circuit's decision in *Range*, has concluded *§ 922(g)(1)* survives a post-*Bruen* constitutional challenge. However, it also appears that every court and the government has misapplied *Bruen* by skating past the distinctly similar rubric and, instead, providing historical examples purported to

be "relatively similar." Such examples, in addition smacking of unconstitutionality on grounds other than the *Second Amendment*, e.g., Establishment Clause violations, are not "distinctly similar" to *§ 922(g)(1)* and fail the Court's requirements in *Bruen*.

Boyd respectfully requests this Court grant his Motion to Dismiss.

Respectfully submitted this 29th day of November 2022.

                                           /s/ Colin M. Stephens
                                        Colin M. Stephens
                                        STEPHENS BROOKE, P.C.
                                        Attorney for Boyd

## Certificate of Compliance

I, Colin M. Stephens, hereby certify that this Reply Brief conforms with LR 7.1(d)(2)((B) in that it does not exceed 3,250 words. Further, this Reply is prepared in a 14-point Century font and is proportionally spaced.

Respectfully submitted this 29th day of November 2022.

    /s/ Colin M. Stephens
Colin M. Stephens
STEPHENS BROOKE, P.C.
Attorney for Boyd